COOK v. MINNEAPOLIS, ST. P. & S. S. M. RY. CO.

(District Court, E. D. Wisconsin. July 15, 1913.)

1. RAILROADS ☞348—INJURIES TO PERSON ON TRACK—NEGLIGENCE—EVIDENCE.

Where, in an action for the death of a pedestrian struck by cars blocking a street, there was evidence of unnecessary blocking of the street for an unreasonable time, of the habit of travelers in passing around cars blocking the street, of the absence of any objection by the railroad company to the use of its right of way to get around the blocked portion of the street, and the testimony was conflicting on the issue of signals by the engineer on moving the train at the time of the accident, a verdict of negligence of the company in operating its train will not be disturbed.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 1138–1150; Dec. Dig. ☞348.]

2. RAILROADS ☞350—INJURIES TO TRAVELER ON TRACK—CONTRIBUTORY NEGLIGENCE—QUESTION FOR JURY.

Whether a pedestrian, killed by cars at a street crossing while he attempted to cross the track, was guilty of contributory negligence, held under the evidence for the jury.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 1152–1192; Dec. Dig. ☞350.]

At Law. Action by Alex Cook, executor, against the Minneapolis, St. Paul & Sault Ste. Marie Railway Company. Verdict for plaintiff, motion for new trial overruled, and judgment entered on verdict. Judgment affirmed, 226 Fed. 1023, —— C. C. A. ——.

D. W. McNamara, of Montello, Wis., for plaintiff.

W. A. Hayes, of Milwaukee, Wis., for defendant.

GEIGER, District Judge. This action, tried before the late Judge Quarles, seeks to recover damages for negligently causing the death of the plaintiff's testate. The jury returned a verdict for the plaintiff, and a motion for a new trial was pending at the time of Judge Quarles' death. The matter has now come before the court upon motion by the defendant for a new trial, and by the plaintiff for judgment upon the verdict.

Judge Quarles, in his charge to the jury, stated the case, doubtless as the evidence disclosed it to him, as follows:

"The two leading principal streets of the village of Montello, running north and south, giving access to and egress from that village, were so situated that they might be blocked by the cars of the defendant standing on that portion of the track. Now under the law the defendant company had the right to block those streets with its cars for a reasonable length of time, when it became necessary. The grade of the track at this point was such that when the train crew was switching at the west end, some 1,000 feet or more west of the depot, it was very easy and convenient to kick the car down and let it run by gravity, unattended by anybody, until it lost its momentum and stopped, and this had been the habit of the company, at least to some extent, sending those cars down without any brakeman to stop them at a particular place, and frequently those cars would stop where they would block one or more of those streets; and it appears that while the streets were so blocked for a long period of time, and during the entire operation of this railway by the defendant, the people of that locality who had occasion to pass back and forth on those streets, whenever the streets were blocked, were in the habit of passing around or going through, getting through the best way they could, and that this custom had been in existence so long that the defendant was presumed to know of its existence. It is charged in this complaint that the. railroad company abused this statutory right, and allowed its cars to block this street when it was not necessary, and for an unreasonable length of time. Now, looking at it in a broad view, it would almost seem that the people there had acquiesced in that habit of the company—they brought no action, apparently, against the company—and that the company, on the other hand, had acquiesced in the right of the people to go around and get through as best they could, because the evidence does not show that the company ever made any objection to that custom. So that this is the situation when the curtain rises on this drama. On the 12th day of May this freight train came into the village, and the train crew proceeded to do their work, went up to the west end, and they kicked a car down, and a short time after they sent down in the same way four additional gondola cars that were empty, so that there were five cars shunted down, which were left to run and stopped whenever the momentum ceased; and in this instance it appears these five cars stopped where they blocked these two streets, shown to be the only public and practicable means of access or of egress to or from the village, and while these cars were standing, blocking both these streets, this old gentleman came along, stood five or six minutes waiting for the train to come and take the cars out of the way, and then he attempted to cross the track, having received a signal from the man Rohrbeck by a nod of the head, which he might or might not have understood, and while attempting to cross he was thrown down by the car and killed."

That the case was permitted to go to the jury with a grave doubt in the judge's mind is shown by this remark appearing in the record:

"Any verdict that the jury may render will be under the control of the court, and while I feel pretty strongly on this question of contributory neg-

ligence, I am inclined to think I ought to let the case go to the jury, and then this question can be reargued, if necessary, and such action taken, in view of the conclusion of the jury, as seems best; whereas, if I take it away from the jury entirely, that is the end of the whole matter, and of course there is no chance to revive it. I think I will let the case go to the jury."

[1] My examination of the testimony satisfies me that it was ample to sustain a finding by the jury that the defendant was negligent. The testimony respecting the unnecessary blocking of the street for an unreasonable length of time, the habit of travelers in passing around the cars thus blocking the street, the absence of any testimony showing objection on the part of the company to the use of its right of way and track for the purpose of getting around the blocked portion of the street, the conflict of testimony respecting the giving of signals by the engineer upon the movement of the train at the time the injury was occasioned—these elements were all disclosed in the testimony, either sufficiently clearly or capable of being found upon a conflict, that the finding of the jury should not be disturbed.

[2] The question of contributory negligence seems to have been regarded as crucial in the case, and naturally its consideration at this time, by the writer hereof, cannot be aided by the advantages which might otherwise arise from having seen or heard the witnesses who testified upon certain matters respecting which there was a conflict. This issue was submitted to the jury in this language:

"Would a man of ordinary care and prudence have undertaken to cross over the track and around a standing car, if placed in the same situation, under the same circumstances, having the same bodily informity, being of the age and crippled as he was? If Mr. Ritchie did nothing but what such a man of ordinary care, intelligence, and prudence would have done under the same circumstances, then he was not guilty of contributory negligence. This, gentlemen, is perhaps the crucial point in this case, and it merits your careful attention. In considering this question, it must be remembered that Mr. Ritchie was 65 or 66 years of age; that he had lost one foot, so that his ability to handle himself was more or less impaired, and it is a correct proposition that greater vigilance was required on the part of Ritchie to keep out of danger and insure his personal safety, by reason of this bodily infirmity. It appears also that he was incumbered by a basket, which he carried on one arm, and a cane. It appears that there was no path around the cars where he attempted to cross, and the ground near the track on the north side thereof was more or less uneven and rough. The presence of the standing cars was notice that the balance of the train might be expected at any time to couple onto these cars. The evidence shows that the old gentleman was quite familiar with this place, the habits and customs of the people, and also the manner of doing business by this railroad company. So that he was presumed to know that these five cars had been set out there for the purpose of being coupled onto and constitute a part of the train when it went away, and that that coupling was liable to take place at any time."

The court also instructed the jury that, if the deceased was under the influence of liquor at the time he was killed to such an extent as to benumb his faculties, such fact would justify a finding of contributory negligence proximately causing the injury, and that there was testimony indicating that one Rohrbeck, by a nod of his head, had suggested to deceased that he might go around the car; that the authority of Rohrbeck to speak for the company does not appear to have been known by

deceased, although he may have known that on former occasions Rohrbeck acted as guard at the crossing at the request of the trainmen. These facts are stated by the court to bear not upon the legal authority of Rohrbeck so much as upon the general questions of the care used by the deceased; and the court also instructed the jury respecting the duty of the deceased to use the care which the law requires of one when about to cross a railway track, and called their attention particularly to certain evidence which the defendant claimed showed negligence on the part of the deceased in crossing the track at a point so near the cars that any starting thereof would inevitably injure him.

The testimony, particularly that respecting the custom of blocking the crossing and of passing around the cars, the knowledge of the train crews thereof, the act of Rohrbeck on the particular day in question in giving directions (apparently on the strength of what the train crew had on other occasions requested him to do) to other travelers, the condition of the ground at and near the point where deceased was struck, the speed of the train, the failure to give a signal, the impossibility of seeing the train because of obstructions, the length of the time which the crossing had been blocked, the specific direction which Rohrbeck had given to the deceased, made a case, it seems to me, proper to be submitted to the jury; and the physical condition of the deceased, both as respects his bodily infirmity and his alleged intoxicated condition, did not demand, in connection with the other circumstances, a finding of contributory negligence as a matter of law. The evidence did not justify the inference conclusively that the deceased was intoxicated, nor do I think the fact of his bodily infirmity placed him in a position where he was bound to wait indefinitely for the removal of the cars, whereas one sound in health would have been at liberty to do just what he did. It would seem that the court gave instructions to the jury upon that phase of the matter, and also with respect to the claim made that the deceased passed too close behind the car, which were as favorable as the defendant could ask.

The testimony shows a sharp conflict upon many matters from which the inferences respecting contributory negligence are to be drawn; and it is my judgment that the ultimate question was properly left to the jury, and that its finding should not be disturbed. I therefore conclude that the motion for a new trial should be overruled, and that judgment should be entered on the verdict.